# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 17-42267 (659) |
|  | ) CHAPTER 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) |
|  | ) (Joint Administration Requested) |
|  | ) |
| Debtors. | ) Hearing Date:  April 5, 2017 |
|  | ) Hearing Time:  1:30 P.M. |
|  | ) Hearing Location:  Courtroom 7 North |
|  | ) |

## DEBTORS' MOTION SEEKING ENTRY
## OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
## THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE
## ENTERED INTO PREPETITION AND SATISFY PREPETITION
## OBLIGATIONS RELATED THERETO AND (B) RENEW, SUPPLEMENT,
## OR PURCHASE INSURANCE POLICIES, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):[2]

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [N/A]; WBG-PSS Holdings LLC [N/A]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [N/A]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; Collective Brands Logistics, Limited [6466]; Dynamic Assets Limited [1978]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. The location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is:  c/o Payless ShoeSource Inc. 3231 SE 6th Avenue Topeka, KS 66607 United States.

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Michael Schwindle in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

**Relief Requested**[3]

1.      By this Motion, and pursuant to sections 105(a), 363(b), 503, 1107(a), 1108, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and  Rule 2015-3(B) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy Rules"), the Debtors seek entry of the proposed interim and final orders (respectively, the "Proposed Interim Order" and "Proposed Final Order"):[4]   (a) authorizing  the  Debtors  to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of business and (ii) renew, supplement, or purchase insurance coverage in the ordinary course of business on a postpetition basis; and (b) granting related relief.   In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81.901(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 to the entry of a final order by the Court in connection with this Motion to the extent that it is later

---

[3]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms elsewhere in this Motion or in the First Day Declaration, as applicable.

[4]     A copy of the Proposed Interim Order and Proposed Final Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://cases.primeclerk.com/payless.

2

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Background**

4.      The Debtors and their non-Debtor affiliates (together, the "Company") comprise the largest specialty family footwear retailer in the Western Hemisphere, offering a wide range of shoes and accessory items at affordable prices.  The Company has more than 4,000 stores in more than 30 countries.  The Debtors are headquartered in Topeka, Kansas, but their operations are extensive and span across Asia, the Middle East, Latin America, Europe, and the United States.

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## **The Debtors' Insurance Policies and Related Payment Obligations**

6.      In the ordinary course of business, the Debtors maintain approximately 44 domestic and foreign insurance policies (collectively, the "Insurance Policies") that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide the Debtors with coverage for, among other things, the Debtors' property, general liability, automobile liability, marine cargo, travel accident, directors' and officers' liability, employment practices liability, fiduciary liability, employed lawyers

3

KE 46235634

professional liability, and foreign commercial liability.  In addition, the Insurance Policies include several layers of excess liability coverage and an umbrella policy.  A schedule of the Insurance Policies is attached hereto as **Exhibit A**,[5] which is incorporated herein by reference.

### A.   Premium Payments

7.       In 2016, the Debtors paid approximately $3.1 million in the aggregate in premiums for the Insurance Policies, plus applicable taxes and surcharges, deductibles, broker and consulting fees, and commissions (the "Premiums").  The Insurance Policies are generally one year in length and renew at various times throughout the year.  For most of the Insurance Policies, the Debtors prepay the entire Premium on or around the start date of each policy period. The Premium payments for certain of the Insurance policies are made in several installments during the policy period, as set forth in each insurance contract, respectively.

8.       As of the Petition Date, the Debtors estimate that they owe approximately $10,000 in Premiums on account of the Insurance Policies, all of which will become due within 21 days after the Petition Date.  The Debtors do not believe that they were in default of any Premiums obligations due under the Insurance Policies as of the Petition Date.  As such, the Debtors seek authority to remit up to $10,000 in Premium obligations on account of the Insurance Policies upon entry of the Interim and Final Orders, and, pursuant to the Final Order,

---

[5]      The descriptions of the Insurance Policies set forth in **Exhibit A** constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions contained in this Motion.  The Debtors request authority to honor obligations and renew all Insurance Policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular insurance policy on **Exhibit A**.  Moreover, and in addition to the Insurance Policies listed on **Exhibit A**, the Debtors maintain numerous insurance policies with respect to, among other things, workers' compensation, employee health, dental, and disability.  These programs are described, and relief is requested with respect to such programs, in the *Debtors' Motion For Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Continue Employee Benefits Programs*, filed contemporaneously herewith.

KE 46235634

the Debtors seek authority to continue paying Premium obligations in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage of their Insurance Policies.

9.      Certain of the Insurance Policies are subject to regular audits (the "Insurance Policy Audits"), which may result in an adjustment of the Premiums owed on account thereof. Insurance Policy Audits for prepetition Premium payments will not conclude until after the Petition Date.  As a result, the aggregate amount of the Debtors' obligations arising from the Insurance Policy Audits is not known at this time.  Accordingly, the Debtors seek authority to honor any amounts owed on account of any Insurance Policy Audits in the ordinary course of business.

**B.      Deductible Fees**

10.      Some of the Insurance Policies require the Debtors to pay a per incident deductible (a "Deductible").  For instance, the Debtors' general liability and auto liability policies carry a $500,000 deductible, per claim.  Other Insurance Policies with Deductibles have per claim deductibles ranging from $250,000 to $1,000,000.  Depending on the type of claim and the applicable Insurance Policy, the Debtors must ultimately pay up to the applicable deductible threshold for each successful or settled claim against these particular Insurance Policies.  Any claim amounts due in excess of the deductible threshold for any given claim are the Insurance Carrier's responsibility.  The Debtors' Insurance Policies do not have any annual deductible thresholds.

11.      Generally, if a claim is made against one of the Debtors' Insurance Policies, the Insurance Administrator (as defined below) or an Insurance Carrier will administer the claim and make any payments in connection therewith.  On a weekly basis, the Debtors reimburse,[6] via a

---

[6]      If a single claim amount exceeds $100,000, the Debtors prefund that claim when paying Deductible Fees.

KE 46235634

deductible payment to a bank account managed by the Debtors' for this purpose, the Insurance Administrator or the Insurance Carrier for applicable payments made on account of insurance claims (the "Deductible Fees").[7]

12.     As of the Petition Date, the Debtors estimate that approximately $315,000 in Deductible Fees on account of prepetition claims under the Insurance Policies will become due and owing within 21 days of the Petition Date.  Additionally, going forward, the Debtors will need to continue paying Deductible Fees on a weekly basis (should they arise) to preserve the coverage provided under certain Insurance Policies.  Over the last year, the Deductible Fees averaged approximately $135,000 per week, but such amount varies from week to week and the weekly (or aggregate) liability on account of Deductible Fees during the pendency of these chapter 11 cases (or during the first three weeks of these cases) cannot be ascertained with any degree of certainty as of the Petition Date.  Accordingly, the Debtors request authority pursuant to the Interim Order to remit up to $315,000 in Deductible Fees on account of prepetition claims that become due and owing within the 21 days of the Petition Date, and to continue paying Deductible Fees in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage of the Insurance Policies.

**C.     Insurance Broker and Administrator Fees**

13.     The Debtors obtain their Insurance Policies through their insurance brokers, Lockton Companies, LLC ("Lockton"), Marsh USA ("Marsh"), and BFL Canada Risk & Insurance ("BFL"), and their respective affiliates (collectively, the "Insurance Brokers").  The Insurance Brokers assist the Debtors in obtaining comprehensive insurance coverage for their

---

[7]     The Debtors cash management processes are more thoroughly described in the *Debtors' Motion Seeking Entry of Interim and  Final Orders (I) Authorizing the Debtors to (A) Continue  Using The Cash Management System and (B) Maintain  Existing Bank Accounts and Business Forms and Books and  Records; (II) Authorizing Continued Intercompany Transactions; (III) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Payments; and (IV) Granting Related Relief,* filed contemporaneously herewith.

6

operations in the most cost-effective manner by negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and providing ongoing support throughout the applicable policy periods.  In addition, the Debtors utilize the services of Gallagher Basset to serve as a third-party administrator for automobile and workers' compensation claims (the "Insurance Administrator"), alleviating the substantial burden on the Debtors that would result from needing to administer the claims process for these claims.

14.     The Debtors pay the Insurance Brokers on account of their services in various manners (all such payments collectively, the "Brokerage Fees").  The Brokerage Fees on account of services provided by Marsh and BFL are included in the Premiums paid on account of the Insurance Policies.  By contrast, Lockton charges the Debtors a flat annual fee of $400,000 for its services, which fee is paid in two installments each year.[8]  As of the Petition Date, the Debtors do not believe that they owe any amounts to the Insurance Brokers on account of Brokerage Fees or any other prepetition obligations.

15.     The Debtors pay the Insurance Administrator $22,500.00 per month on account of its services (the "Insurance Administrator Fees").  As of the Petition Date, the Debtors do not believe that they owe any amounts to the Insurance Administrator on account of Insurance Administrator Fees.

16.     As such, only out of an abundance of caution, the Debtors request authority to pay any prepetition amounts outstanding on account of Brokerage Fees and Insurance Administrator Fees and to continue paying Brokerage Fees and Insurance Administrator Fees in the ordinary

---

[8]     The Brokerage Fees for Lockton Companies, LLC also include fees for its services related to procurement of surety bonds, as described more fully in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue and Renew the Surety Bond Program on an Uninterrupted Basis, and (II) Granting Related Relief*, filed contemporaneously herewith.

KE 46235634

course of business on a postpetition basis in order to ensure uninterrupted coverage and administration of the Insurance Policies.

**Basis for Relief**

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations**

17.      As discussed above, the Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' businesses, properties, and assets.  As such, it is essential that the Debtors' insurance coverage continues in full force and effect during the course of these chapter 11 cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Similarly, Local Bankruptcy Rule 2015-3(B) requires a debtor in a chapter 11 case to maintain certain types of insurance policies, including many of the Insurance Policies held by the Debtors.  In addition, the *Chapter 11 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date, and "make all premium payments thereon when due."  *See U.S. Trustee Guidelines*, § 6.  To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, Local Bankruptcy Rule 2015-3(B), applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to: (i) pay the prepetition amounts currently due and owing under the Insurance Policies in the ordinary course of business, including those prepetition amounts due in connection with premiums, Deductible Fees, and Brokerage Fees; (ii) continue to honor obligations arising under the Insurance Policies and, if necessary; (iii) renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of their businesses.

8

## II.    Renewing, Supplementing, Entering into New Policies, and Paying Obligations Under the Insurance Policies in the Ordinary Course of Business are Warranted

18.    Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Insurance Programs and to renew or obtain new insurance programs as such actions are in the ordinary course of the Debtors' businesses.  Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

19.    The relief requested herein may be granted by the Court pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  *See In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (authorizing debtor to pay prepetition claims of vendors because the vendors are "critical to the Debtor's reorganization");  *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (authorizing sale of assets because there was a "good business reason to grants such an application"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (under section 363(b), debtor must "show that a sound business purpose" justifies the proposed use of property).  Moreover, section 503(b)(l)(A) of the Bankruptcy Code provides

9

that: "After notice and a hearing, there shall be allowed, administrative expenses[,] including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Court, therefore, can authorize the Debtors to use estate funds to pay any obligations under the Insurance Policies arising during or relating to the period after the Petition Date.

20.     Further, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit preplan payments of prepetition obligations when essential to the continued operation of a debtor's business. The bankruptcy court's power under section 105(a) to authorize payment of prepetition obligations is popularly referred to as the "necessity of payment" rule (also referred to as the "doctrine of necessity").

21.     Courts in this and other districts have long recognized the "doctrine of necessity" or the "necessity of payment" rule, as the rehabilitation of a debtor in reorganization cases is "the paramount policy and goal of Chapter 11." *Ionosphere*, 98 B.R. at 175–76; *See also In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor."); *In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the existence of the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Just For Feet*, 242 B.R. 821, 824-25 (D. Del. 1999) (finding that payment

10

of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate).

22.     The Debtors submit that there is sufficient business justification to grant the relief requested herein because failure to pay Premiums and related insurance expenses when due may harm the Debtors' estates in several ways.  Specifically, the Insurance Carriers may refuse to renew the Debtors' Insurance Policies, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program in its entirety.  This would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' insurers.  Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their businesses given the Debtors' myriad regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

23.     The Debtors submit further that it is also in the best interests of their estates to have the ability to revise, extend, supplement, or change insurance coverage, as necessary, on a postpetition basis pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code.  Indeed, the Debtors' Insurance Policies are essential to the preservation of the value of the Debtors'

businesses, properties, assets, and the estates, as well as their ability to successfully prosecute these chapter 11 cases.  Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.  Courts in this district have routinely granted relief similar to that requested herein.  *See, e.g., In re Total Hockey, Inc.*, No. 16-44815 (Bankr. E.D. Mo. July 8, 2016); *In re Peabody Energy Corp.*, No. 16-42529 (Bankr. E.D. Mo. May 17, 2016); *In re Noranda Aluminum, Inc.*, No. 16-10083 (Bankr. E.D. Mo. Feb. 11, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo. Jan. 13, 2016 and Jan. 14, 2016); *In re Bakers Footwear Grp. Inc.*, No. 12-49658 (Bankr. E.D. Mo Oct. 9, 2012 and Oct. 10, 2012).[9]

## Processing of Checks and
## Electronic Fund Transfers Should Be Authorized

24.    The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during these chapter 11 cases, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process,

---

[9]    Because of the voluminous nature of these orders, such orders have not been attached to this Motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

KE 46235634

honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

25.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. For the reasons discussed above, authorizing the Debtors to continue to honor obligations arising under the Insurance Policies and, if necessary, to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business is vital to the Debtors' operations and the failure to permit such relief can potentially severely disrupt the Debtors' operations at a critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

26.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' or any other parties-in-interests' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' or any other parties-in-interests' rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

27.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

28.    The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to certain Prepetition ABL Lenders; (e)  counsel to the Prepetition First Lien Term Loan Agent and the DIP Term Loan Agent; (f) counsel to the Prepetition First Lien Term Loan Steering Committee; (g) counsel to the Prepetition Second Lien Term Loan Agent; (h) the DIP ABL Agent; (i) co-counsel to the DIP ABL Agent, Choate, Hall & Stewart LLP (Attn: Kevin J. Simard, Esq. and Douglas R. Gooding, Esq.) and Thompson Coburn LLP (Attn. Mark V. Bossi, Esq.); (j) the Tranche A-1 Agent; (k) counsel to the Tranche A-1 Agent, Schulte, Roth & Zabel, LLP (Attn: Adam C. Harris, Esq.); (l) the United States Attorney's Office for the Eastern District of Missouri; (m) the Internal Revenue Service; (n) the United States Securities and Exchange Commission; (o) the state attorneys general for all states in which the Debtors conduct business; (p) the Insurance Carriers; (q) the Insurance Broker; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

29.    No prior request for the relief sought in this Motion has been made to this or any other court.

KE 46235634

WHEREFORE, the Debtors respectfully request entry of the the Proposed Interim Order and Proposed Final Order (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  April 4, 2017
St. Louis, Missouri

/s/ *Steven N. Cousins*

Steven N. Cousins MO 30788
Erin M. Edelman MO 67374
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
Telephone:  (314) 621-5070
Facsimile:  (314) 612-2239
Email:  scousins@armstrongteasdale.com
Email:  eedelman@armstrongteasdale.com

Nicole L. Greenblatt, P.C. (*pro hac vice* pending)
Cristine F. Pirro (*pro hac vice* pending)
Jessica Kuppersmith (*pro hac vice* pending)
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, NY 10021
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  nicole.greenblatt@kirkland.com
Email:  cristine.pirro@kirkland.com
Email:  jessica.kuppersmith@kirkland.com

James H.M. Sprayregen, P.C.
William A. Guerrieri  (*pro hac vice* pending)
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  will.guerrieri@kirkland.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

# **EXHIBIT A**

**Insurance Policies**

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Auto Liability | Zurich American Ins. Co. | BAP5918468 11 (US) | 2/1/2017-2/1/2018 | US | Liability, collision, comprehensive, personal injury protection, and uninsured/underinsured motorist coverage in US. | $68,000 |
| Auto Liability | Zurich Canada | AF 9800025 (CAN) | 2/1/2017-2/1/2018 | Canada | Liability, collision, comprehensive, personal injury protection, and uninsured/underinsured motorist coverage in Canada. | $10,700 |
| Business Travel Accident | ACE American Insurance Company | ADDN01172013R | 2/1/16-2/1/19 | Global | Medical evacuation and accidental death and dismemberment; domestic and international | $40,900 |
| Crime (Primary) | Travelers Casualty & Surety | 105848388 | 10/9/2016-10/9/2017 | Global | Employee theft, forgery, counterfeit money, computer crime, identity fraud, funds transfer fraud | $45,500 |
| Crime (Excess) | Great American Insurance Company | CRP059-48-98-04 | 10/9/2016-10/9/2017 | Global | (excess) Employee theft, forgery, counterfeit money, computer crime, identity fraud, funds transfer fraud | $26,900 |
| Cyber (Primary) | Beazley | W1C0D9160101 | 7/15/16-7/15/17 | Global | Cyber extortion, data protection, business interruption, forensic expenses, dependent business loss, extortion threat, security breach | $320,600 |

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Cyber (First excess) | XL | MTE9033771 | 7/15/16-7/15/17 | Global | (excess) Cyber extortion, data protection, business interruption, forensic expenses, dependent business loss, extortion threat, security breach | $197,000 |
| Cyber (Second excess) | Argo | XS407451 | 7/15/16-7/15/17 | Global | (excess) Cyber extortion, data protection, business interruption, forensic expenses, dependent business loss, extortion threat, security breach | $67,750 |
| Directors & Officers Liability (Primary) | National Union Fire Ins. Co. (AIG) | 21398801 | 10/9/2016-10/9/2017 | Global | ($15M Limit) reimbursement for losses or advancement of defense costs as a result of a legal action brought for alleged wrongful | $112,000 |
| Directors & Officers Liability (First Excess) | Chubb ACE American Insurance Company | DOX G24577843 005 | 10/9/2016-10/9/2017 | Global | ($25M Limit) reimbursement for losses or advancement of defense costs as a result of a legal action brought for alleged wrongful | $58,800 |
| Directors & Officers Liability (Second Excess) | Axis Insurance Company | MCN769915/01/2016 | 10/9/2016-10/9/2017 | Global | ($10M Limit) reimbursement for losses or advancement of defense costs as a result of a legal action brought for alleged wrongful | $33,600 |
| Directors & Officers Liability (Lead Side A/DIC) | XL Specialty Insurance Company | ELU146739-16 | 10/9/2016-10/9/2017 | Global | ($10M Limit) Difference in Conditions coverage for individual directors and officers | $29,400 |

2

KE 46235634

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Employment Practices Liability (Primary) | National Union Fire Ins. Co. | 21398801 | 10/9/2016-10/9/2017 | Global | ($15M Limit) Coverage for wrongful acts arising from the employment process | $155,900 |
| Employment Practices Liability (First Excess) | Chubb ACE American Insurance Company | DOXG24577843-005 | 10/9/2016-10/9/2017 | Global | ($5M Limit) Coverage for wrongful acts arising from the employment process | $34,600 |
| Excess Liability | Navigators | CH17FXR862843IV | 2/1/2017-2/1/2018 | Global | ($25M XS $25M) Employer's, general, automobile, and foreign liability umbrella excess | $39,000 |
| Excess Liability | The Ohio Casualty Insurance Company (Liberty) | ECO (18) 55902385 | 2/1/2017-2/1/2018 | Global | ($25M XS $50M) Employer's, general, automobile, and foreign liability umbrella excess | $29,700 |
| Excess Liability | Allianz Global Risks US Insurance Company | ULA 2008490 | 2/1/2017-2/1/2018 | Global | ($25M part of $50M XS $75M) Employer's, general, automobile, and foreign liability umbrella excess | $30,000 |
| Excess Liability | Great American Insurance Group | TUE 6680256 10 | 2/1/2017-2/1/2018 | Global | ($25M part of $50M XS $75M) Employer's, general, automobile, and foreign liability umbrella excess | $30,000 |

3

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Excess Liability | C.N.A. | 6024082862 | 2/1/2017-2/1/2018 | Global | ($25M part of $50M XS $125M) Employer's, general, automobile, and foreign liability umbrella excess | $25,000 |
| Excess Liability | XL Insurance Co. | US00008657LI17A | 2/1/2017-2/1/2018 | Global | ($25M part of $50M XS $125M) Employer's, general, automobile, and foreign liability umbrella excess | $25,000 |
| Fiduciary Liability (Primary) | National Union Fire Ins. Co. | 21398801 | 10/9/2016-10/9/2017 | Global | ($15M Limit) Defense and reimbursement for fiduciary-related claims of mismanagement of employee benefit plans | $23,700 |
| Fiduciary Liability (First Excess) | Chubb ACE American Insurance Company | DOX G24577843 005 | 10/9/2016-10/9/2017 | Global | ($5M Limit) Defense and reimbursement for fiduciary-related claims of mismanagement of employee benefit plans | $7,500 |
| Foreign Casualty Package | Generali | GFP900023 | 2/1/2017-2/1/2018 | Foreign | Foreign liability coverage | $25,500 |
| General Liability | Zurich American Ins. Co. | GLO5918469-11 (US) | 2/1/2017-2/1/2018 | US | Protection against claims of bodily injury, personal injury, and property damage. (US) | $187,500 |

4

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| General Liability | Zurich Canada | 8834208 (CAN) | 2/1/2017-2/1/2018 | Canada | Protection against claims of bodily injury, personal injury, and property damage. (CAN) | $10,700 |
| General Liability - Taiwan | MSIG | 0800-05CGP00019 | 2/1/2017-2/1/2018 | Taiwan | Bodily injury and property damage | $1,600 |
| Property DIC - CA (Primary) | Endurance | CPN10010601400 | 2/1/2017-2/1/2018 | US - California | Earthquake peril in California. ($7.5M p/o $15M) | $78,300 |
| Property DIC – CA (Primary) | Arch | ESP005334904 | 2/1/2017-2/1/2018 | US - California | Earthquake peril in California. ($7.5M p/o $15M) | $79,300 |
| Property DIC – CA (Excess) | Aspen | NSM37118 | 2/1/2017-2/1/2018 | US - California | Excess earthquake peril in California. | $40,000 |
| Property Global | Liberty Mutual | MJ2-L9L-448456-027 | 2/1/2017-2/1/2018 | Global | Building damage, content damage, loss of income related to a covered loss | $860,000 |

KE 46235634

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Property - Canada | Royal & Sun Alliance Insurance Company of Canada | COM 047201595 | 2/1/2017-2/1/2018 | Canada | Building and content damage | $25,000 |
| Property - Taiwan | China Pacific | 70-105-06787219-0005-AAF | 2/1/2017-2/1/2018 | Taiwan | Building and content damage | $1,000 |
| Ocean Cargo | AGCS Marine Insurance Company (Allianz) | OC96079000 | 2/1/2017-2/1/2018 | Global | Cargo during the entire course of transit | $65,300 |
| SOS International | International SOS | 11BCMA000220 | 2/1/2017-2/1/2018 | Global | Covers security evacuation, Country Risk Report | $51,600 |
| Special Crime | Federal Insurance Company | 8225-9848 | 10/9/2015-10/9/2018 | Global | Kidnap, ransom, and extortion | $34,500 |
| Storage Tank Liability | ACE American Insurance Company | G24730438 005 | 10/10/2016-10/10/2017 | US - Kansas | Storage tank for corporate headquarters electrical backup generators | $1,100 |

KE 46235634

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| Umbrella (Primary) | American Guarantee and Liability Insurance Company (Zurich) | AUC 0140954-00 | 2/1/2017-2/1/2018 | Global | General, automobile, and foreign liability umbrella | $195,500 |
| Workers Compensation | Zurich American Ins. Co. | WC5918470-11 | 2/1/2017-2/1/2018 | US | Workers compensation for AK, AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, MT, NC, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT,  and WV | $476,600 |
| Workers Compensation | Zurich American Ins. Co. | WC 5918471-11 | 2/1/2017-2/1/2018 | US - Wisconsin | Workers compensation for WI | $1,500 |
| Workers Compensation | Pacific Indemnity Ins. Co. | WC001600007 | 5/27/2016-5/27/2017 | Guam and Saipan | Guam and Saipan Workers Compensation | $3,300 |
| D&O Tail Policy (Primary) | National Union Fire Ins. Co. (AIG) | Tied to 21398801 | Date of emergence plus 6-years | Global | Six-year run off primary D&O, EPL, and Fiduciary | $138,733 |
| D&O Tail Policy (Excess) | Chubb ACE American Insurance Company | Tied to DOX G24577843 005 | Date of emergence plus 6-years | Global | Six-year run off excess D&O, EPL, and Fiduciary | $55,148 |

7

| Type of Policy Coverage | Insurance Carrier(s) | Policy Number | Policy Term | Geographic/Foreign Limitations | Description of Policy | Approximate Annualized Premium |
|---|---|---|---|---|---|---|
| D&O Tail Policy (Excess) | Axis Insurance Company | Tied to MCN769915/01/2016 | Date of emergence plus 6-years | Global | Six-year run off excess D&O | $18,269 |
| D&O Tail Policy (A/DIC) | XL Specialty Insurance Company | Tied to ELU146739-16 | Date of emergence plus 6-years | Global | Six-year run off Difference in Conditions coverage for individual directors and officers | $16,002 |

8